BUGG v. FAIRVIEW FARMS, INC.

Opinion of the Court

1. Workmen's Compensation—Compromise and Settlement.

Parties, by agreement, did not resolve the issue of whether an approval of a redemption agreement was a determination of the conditions of liability under the Workmen's Compensation Act by the compensation commission nor did they submit it to the referee for decision as they reserved the question for determination in a lawsuit and expressly represented to the referee that the matter was still disputed and this practice is permissible under the act.

2. Compromise and Settlement—Partial Settlement.

Parties may settle any part of a controversy upon which they may reach agreement and leave the controverted part for litigation.

3. Judgment—Bar.

An adjudication, in order to be a bar, must be taken and rendered upon the merits.

4. Evidence—Parol Evidence—Res Judicata.

Parol evidence is admissible to ascertain whether a given question in issue was litigated, submitted and decided where the record is not conclusive and the issue of *res judicata* is raised.

---

References for Points in Headnotes

[1, 2] 58 Am Jur, Workmen's Compensation § 389 *et seq.*
[3] 46 Am Jur 2d, Judgments § 477.
[4] 46 Am Jur 2d, Judgments § 606.
[5, 6] 58 Am Jur, Workmen's Compensation § 270 *et seq.*
[7] 58 Am Jur, Workmen's Compensation § 355.
[8–10] 22 Am Jur 2d, Death § 100 *et seq.*
[11] 50 Am Jur, Statutes § 223.
[12] 58 Am Jur, Workmen's Compensation § 371.
[13, 14] 22 Am Jur 2d, Death § 89.
[15] 58 Am Jur, Workmen's Compensation § 64 *et seq.;* 22 Am Jur 2d, Death § 97.

5. Workmen's Compensation—Liability—Redemption Agreement.
The conditions of liability under the Workmen's Compensation Act are necessarily determined by the compensation department for the purpose only of approving a redemption agreement, but this does not necessarily adjudicate the issue for all purposes.

6. Workmen's Compensation—Redemption Agreement—Judgment —Default Judgment.
An agreement of redemption in a workmen's compensation case admits the jurisdiction of the commission only for the purpose of approving the agreed payment just as a judgment by default admits the legality of the demand only for the purposes of the suit.

7. Workmen's Compensation—Redemption Agreement—Estoppel —Release—Bar.
Defendants, who were the employer and a fellow employee of plaintiff's decedent, were estopped to raise the claim of release in a wrongful death action by an administratrix who had filed a claim with the Workmen's Compensation Department against the employer, in light of an agreement of the parties to the workmen's compensation case that the disputed conditions of liability under the act would be reserved for determination in the law action, and the payment by the employer pursuant to the redemption agreement under the circumstances of the case was tantamount to a voluntary payment and could not be pleaded in bar in the lawsuit (MCLA § 416.1).

Opinion Concurring in Reversal
Black, J.

8. Death — Wrongful Death — Beneficiary — Compromise and Settlement.
*No pecuniarily injured beneficiary of an alleged cause for wrongful death may, by his or her separate, unilateral and finally effective personal acquittance of the accused wrongdoer, destroy or otherwise conclude the pleaded cause and any such beneficiary, having thus personally acquitted the accused wrongdoer, has accomplished no more and no less than outright elimination of himself or herself as such beneficiary.*

9. Death — Wrongful Death — Parties — Proceeds — Compromise and Settlement — Judgment.
*One individually concerned in or with a duly pending suit for wrongful death may not, by action taken other than in strict*

*accord with the wrongful death act and the probate statute
governing distribution of proceeds of rights of action for
wrongful death, defeat the suit or destroy the statutory rights
of others in and to the potential proceeds thereof; under these
statutes it was the intent of the legislature that one thus
concerned may by voluntary action on his part resulting either
in a release or an adjudication binding upon him and the
alleged wrongdoer, bar his original right as an eligible dis-
tributee of whatever but for such action might have been
recovered by him and as for pecuniary injury (MCLA §§
600.2922, 702.115).*

10. Death — Wrongful Death — Workmen's Compensation —
    Trustee — Beneficiaries — Compromise and Settlement —
    Judgment — Parties — Privity.

*No trustee, whether or not he is a fellow beneficiary, may by
his own separate venture for personal consideration defeat
or bar the rights of other eligible beneficiaries or, the rights
of eligible creditors of the trust, from any of their rights
under the wrongful death statute, no judgment of a court
or other tribunal sought and obtained thus by him could
possibly affect said rights, they being neither party nor privy
thereto and not being represented actually or legally in the
proceeding creative of such judgment and nothing whatever
in the workmen's compensation law discloses or even hints
at departmental authority to adjudicate the rights of un-
represented others; rights arising by virtue of a wholly
separate statute such as the wrongful death act (MCLA
§ 600.2922).*

11. Statutes—Construction—Legislative Intent.

*The Michigan Supreme Court should look to the intent of the
legislature when called upon to apply a statutory provision
or provisions.*

12. Workmen's Compensation—Statutes—Redemption of Liabil-
    ity—Course of Employment—Injury Arising From Employ-
    ment.

*The powers and authority of the Workmen's Compensation
Department must be found within the four corners of its
mother statute and nowhere in that entire statute is there
any provision which authorizes the department to issue an
order of redemption which, by proviso or "no prejudice"
language, saves for determination by another forum issue
whether the injured employee was engaged in the course*

*of his employment at the time of injury, or issue whether that injury arose out of such employment (MCLA § 412.22).*

13. WORKMEN'S COMPENSATION—AWARD—REDEMPTION OF LIABILITY —WIDOW—DEPENDENTS—ACCORD AND SATISFACTION.

*The dependent widow of a fatally injured workman who sought and received in her own right, with Workmen's Compensation Department approval, a compensatory award that was redeemed and fully paid and, as between the widow and defendant employer settled her status, as she legally became a statutory dependent of the decedent, entitled as such to the dependency benefits received by her; the widow is as much ineligible, as an alleged pecuniarily injured survivor of her husband, as if she had been judged contributorily negligent in bringing about the traffic accident which caused his fatal injuries or as if she had voluntarily settled with the employer and had given to it her outright release of liability; by provisions of the Workmen's Compensation Act, she received satisfaction in full from her husband's employer for the fatal injuries suffered by him (MCLA §§ 412.22, 416.1).*

14. DEATH — WRONGFUL DEATH — ACCELERATED JUDGMENT — WIDOW — INSTRUCTIONS — BENEFICIARY — WORKMEN'S COMPENSATION — REDEMPTION OF LIABILITY.

*Trial court's order for accelerated judgment in an action under the wrongful death act brought by the decedent's widow as administratrix of his estate, dismissing the case as to the decedent's employer and a fellow employee of the decedent, should be reversed and the cause remanded for trial with the decedent's widow eliminated, by jury instruction, as a claimed pecuniary beneficiary where she had sought and obtained statutory redemption of her claim for workmen's compensation.*

DISSENTING OPINION

ADAMS, J.

15. DEATH — WRONGFUL DEATH — WORKMEN'S COMPENSATION — ELECTION OF REMEDIES.

*The problem of choice of remedies between the wrongful death act and the Workmen's Compensation Act is resolved once the provisions of a section of the latter act, providing for release of law claims against the employer, come into play, as the Workmen's Compensation Act remedy against the employer is exclusive (MCLA § 416.1).*

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and Fitzgerald and T. M. Burns, JJ., denying application for leave to appeal from Oscoda, Allan C. Miller, J. Submitted January 5, 1971. (No. 3 January Term 1971, Docket No. 52,425.) Decided August 27, 1971.

Complaint by Olive Bugg, administratrix of the estate of Orville E. Bugg, deceased, against Fairview Farms, Inc., John D. Willson, Roy W. Wiltse, Jr., and Dalton W. Wiltse for damages for the wrongful death of plaintiff's decedent. Accelerated judgment for defendants Fairview Farms, Inc., and John D. Willson. Plaintiff's application for delayed appeal to the Court of Appeals denied. Plaintiff appeals. Reversed.

*Bruce O. Wilson* (*Frances R. Avadenka,* of counsel), for plaintiff.

*Cotter, Janes & O'Connell,* for defendants Fairview Farms, Inc., and John D. Willson.

T. G. KAVANAGH, J. This case comes to us under the appearance of a workmen's compensation question, but what is really involved here concerns an issue which has broad implications for the whole spectrum of our practice.

The facts giving rise to the controversy are not disputed.

Orville Bugg was employed by the defendant corporation as the manager of its farm near Fairview, Michigan. On March 16, 1967, Orville Bugg and a fellow employee John D. Willson took a company truck into the village of Fairview for repairs to be made. While waiting for repairs to be made Orville Bugg purchased an automobile from the garage

owner.  Due to the fact that the automobile was not operative, Orville Bugg instructed John Willson to hook a tow chain from the truck to the automobile to take it back to the farm.  Willson did so and on the return trip from the garage to the farm, with Willson driving the truck and Orville Bugg riding in the towed car, an accident occurred wherein the car broke loose from the truck and collided with another truck.  Orville Bugg was killed in the collision.

Olive Bugg, his widow, was appointed administratrix of his estate and on June 21, 1967 brought a wrongful death action against the employer, John Willson and Roy W. Wiltse, Jr. and Dalton W. Wiltse, the owner and operator respectively of the other vehicle involved in the collision.

In their answers all defendants denied the allegations of negligence and defendants Fairview Farms, Inc. and John Willson affirmatively pleaded that both Orville Bugg and John Willson were acting in the course of their employment at the time of the accident, and asserted that plaintiff's exclusive remedy was under the Workmen's Compensation Act.

On August 16, 1967, Olive Bugg as Orville Bugg's widow, filed a claim with the Workmen's Compensation Department and defendant Fairview Farms, Inc. and its compensation carrier answered, denying that Orville Bugg had received any injuries in the course of his employment.

On January 4, 1968, defendants Fairview Farms, Inc., and John Willson moved to dismiss the wrongful death action against them on the asserted exclusiveness of the workmen's compensation remedy.

While this motion was pending Olive Bugg as the claimant widow entered into an agreement with Fairview Farms, Inc. and its compensation carrier to redeem the asserted liability for $15,000 and after

a hearing an order of the commission approving the agreement was mailed on March 4, 1968.

The transcript of the compensation hearing shows that all parties agreed the settlement was a compromise based on the asserted defense that the injury did not arise in the course of employment.

On May 16, 1968 the motion to dismiss the wrongful death action was granted on the trial court's holding that the plaintiff was collaterally estopped to proceed in the negligence action of the workmen's compensation redemption.

The pertinent parts of the transcript of the redemption proceedings reveal the discussion between the parties and the referee:

*"The Referee:* Reed Ranch, Fairview, Michigan, against, Fairview Farms, Incorporated, the employer, and Consolidated Underwriters, insurance carrier.

"Mrs. Bugg is represented by her attorney, Mr. Bruce O. Wilson, and the defendants are represented by Mr. Donald J. Parthum of the firm of Ward, Plunkett, Cooney, Rutt & Peacock.

"This case is before the Workmen's Compensation Department on an Agreement to Redeem Liability for the proposed amount of $15,000.00 in regard to an injury date of March 16, 1967.

"I have a statement of attorney fees approved by Mrs. Bugg in the amount of $2,250.00 which would be fifteen per cent of the proposed redemption amount, and that appears to be in order.

"I have a Form 100 in the file which was filed with the Compensation Department in Lansing on April 27, 1967 showing me a date of personal injury of March 16, 1967, at which time Mr. Bugg was killed in an automobile vehicle collision. Notice of dispute was filed by the claims manager for the Consolidated Underwriters; then a petition for hearing was filed by Mr. Wilson and that was received in Lansing on August 16, 1967, and also shows a

date of March 16, 1967, as injury date, shows the
decedent was killed in an auto accident.

"An answer denying liability was filed by Mr.
Parthum on behalf of the defendants. This case
has been before the Compensation Department for
pretrial hearing and then was set for trial on March
6, 1968. However, the parties have come in with
redemption papers which appear to be in order, and
I am ready to hear the testimony of Mrs. Bugg.

"*Examination by Mr. Wilson* [*attorney for plaintiff*]:

"*Q.* Mrs. Bugg, I have discussed with you the
legal questions involved in this case as to whether
or not your husband was within the scope of his
employment at the time that he was killed and, as
you know, it is the position of Fairview Farms,
Incorporated, and their Workmen's Compensation
insurance carrier that he was not working at the
time that he was killed. You understand that?

"*A.* Yes.

"*Q.* And you understand that you are entitled to
a trial in this matter. You don't have to accept
this settlement. We can go to trial before this
Referee or some other Referee duly appointed by
the Workmen's Compensation Commission and, in
the event that we go to trial, we might get more
money than we're being offered today, we might
get the same thing, we might get less and might
conceivably get nothing at all. You understand
that?

"*A.* Yes."

(After examination by the Referee.)

"*Mr. Wilson:* May I ask: Did you receive some
other benefits that you've got, some money in the
bank? How much money do you have in the bank
right now?

"*A.* $4,000.00 in savings certificates.

"*Mr. Wilson:* You have $4,000.00 left in a savings
account, which she is going to add this money to.
Thank you.

"I would just like to add this, your Honor, too, that there is a third party action in this case in which the employer has taken what we feel is an inconsistent position. In the Circuit Court of Oscoda County, they have filed an affirmative claim that Mr. Bugg died within the scope of his employment. Of course, it is not binding. I understand the true party is the Workmen's Compensation carrier. The Workmen's Compensation carrier has agreed to waive all rights of subrogation in this third party case so that in the event that we are successful in obtaining further sums for Mrs. Bugg in the third party action, there will be no moneys due and owing to the Workmen's Compensation carrier.

*"The Referee:* I understand.

*"Mr. Parthum* [*attorney for defendants*]: Your Honor, I would only like to add for clarification: As you know, we have discussed the matter in great lengths. We have filed a notice of dispute alleging that the death of Mr. Bugg did not arise out of and in the course of the employment. There are serious legal questions involved in the compensation case. I think it would be safe to assume that Mr. Wilson and I have both taken the position that had the case been tried, regardless of the outcome, I'm sure it would have been appealed to the Appeal Board, the Court of Appeals and on up to the Supreme Court. It's not an open and shut type thing for one side or the other, frankly. So, consequently, it is a settlement based upon our defense that the injury of Mr. Bugg and his resulting death did not arise out of and in the course of the employment.

*"Mr. Wilson:* That's correct, your Honor.

*"Mr. Parthum:* And if there are any recovery or recoveries under the third party case, the Consolidated Underwriters as insurance carrier, Fairview Farms, Incorporated, waives any and all rights of subrogation under the third party statute.

*"The Referee:* Mrs. Bugg, do you understand what we're talking about, that you might—if you

are fortunate, you might receive some more money from this other case?

"*A.* Yes, sir.

"*The Referee:* Not against the employer or insurance carrier but against this other party; and if you do receive any more money from this other case, you won't have to give any part of it back to the insurance company in this case, this insurance company.

"*Mr. Wilson:* The other case, too, your Honor, is also against the employer.

"*The Referee:* Oh, it is also against the employer?

"*Mr. Wilson:* Yes.

"*Mr. Parthum:* As one of the defendants.

"*Mr. Wilson:* As one of the defendants, the question being if he was not within the scope of his employment we are entitled to sue the employer.

"*The Referee:* I see. In any event, I think you understand, do you not, Mrs. Bugg?

"*A.* I believe so.

"*The Referee:* That by this settlement, you receive $12,750.00 clear to you; $2,250.00 goes to your attorney for his services. That's satisfactory to you, is it not?

"*A.* Yes.

"*The Referee:* If you are so fortunate as to receive any money out of any other settlement from any other case later on, you will not have to give any of this money back that you are receiving now.

"Am I right now, gentlemen? Is that the understanding?

"*Mr. Wilson:* Yes.

"*Mr. Parthum:* Yes.

"*The Referee:* I just wanted Mrs. Bugg to understand. Do you understand that?

"*A.* Yes, I do.

"*The Referee:* In this way, you're making what we might consider a compromise settlement of the case, your compensation case. You are getting a fairly substantial sum of money whereas, if you

had a trial and if you lost it, you could end up with nothing or, if you had a favorable decision before a Referee such as myself, it might be appealed and it would take some time before you would have a final decision and it could go to other courts. It could go on for a long time. Do you understand me?

"*A.* Yes, sir.

"*The Referee:* And I believe with certain substantial legal issues in the case which I understand exist in this case, I believe the settlement is fair and in your best interests. Are you satisfied with it?

"*A.* Yes, I am.

"*The Referee:* And in a sense in settling this case, you are also perhaps acting for your son, too, if he's going to school and he is being supported by you. Do you understand that?

"*A.* Yes.

"*The Referee:* Right, gentlemen?

"*Mr. Wilson:* Yes, sir.

"*Mr. Parthum:* Yes.

"*The Referee:* I think the case has been covered properly and Mrs. Bugg understands her rights. I am satisfied that the settlement is in her best interests.

"Mr. Wilson I know is a competent attorney in this field of law, and it is also evident that he was a friend of the deceased and is a personal friend of the widow and I'm sure he has done everything he can in the best interests of his client. I will approve the redemption."

On appeal we are asked to assay the correctness of the trial court's dismissal of the action as to defendants Fairview Farms, Incorporated and John D. Willson.

The trial judge's reasoning whereby he arrived at the conclusion that defendants' motion should be granted is contained in the following excerpts from the transcript of the hearing thereon:

*"The Court:* This Section 17.144,[1] what does that say, again?

*"Mr. Thomas [attorney for plaintiff]*: 'Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, shall be the exclusive remedy against the employer.'

*"Mr. Janes [attorney for defendants]*: Section 17.212[2] is more restrictive that 17.144. It says: merely filing a claim, period.

*"The Court:* I realize that. On this Section 17.212 we could rely strictly on the opinion, but it seems to me that to explain what the Supreme Court meant[3] we would have to say they are finding that the representative's action is the action of the dependents. Therefore, acting as their representative, it becomes res judicata. Even though they are different entities, one entity is acting in behalf of the other.

"To hold that it is not res judicata would be a strained finding of the scope of res judicata and collateral estoppel. Whereas under Section 17.144 we need only say that the parties agreed through their representatives that liability existed and paid money on that, and that they are not in a position to claim otherwise, without getting into the question of identity of the parties. * * *

*"The Court:* It appears to the Court that the decedent was an employee of the defendant Fair-

---

[1] "Where the conditions of liability under this act exist, the right to the recovery of compensation benefits, as herein provided, shall be the exclusive remedy against the employer." MCLA § 411.4 (Stat Ann 1968 Rev § 17.144).

[2] "If the employee, or his dependents, in case of his death, of any employer subject to the provisions of this act files any claim with, or accepts any payment from such employer, or any insurance company carrying such risks, or from the commissioner of insurance on account of personal injury, or makes any agreement, or submits any question to arbitration under this act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury." MCLA § 416.1 (Stat Ann 1968 Rev § 17.212).

[3] The court is referring to the opinion in *Jordan v. C. A. Roberts Company* (1967), 379 Mich 235.

view Farms, and John D. Willson was a co-servant; and that decedent's employment status existed at the time of the accident as a general manager. By description, his services would be pretty much on a 24-hour basis, and when the accident happened he was in the community returning to the Reed Ranch in the car that he had purchased. While this might have been somewhat extra-curricular, it would nevertheless seem to be in the interest of going and coming from his place of employment during working hours. * * *

"In any event, the parties here entered into a settlement resolving the issue through their representative, as shown by Defendant's Exhibit 1. While the identity of the parties is not exact, they certainly are such as to be bound under the principle of collateral estoppel.

"Within the meaning of the majority opinion in *Jordan* v. *Roberts* [(1967), 379 Mich 235], this case should be dismissed insofar as these two defendants are concerned. As to defendants Fairview Farms, Inc. and John D. Willson, the case is dismissed and the motion for accelerated judgment is granted as prayed.

*"Mr. Janes:* Thank you, Your Honor.

*"Mr. Thomas:* Could I ask a question. Your Honor? You are not making any decision as to the inter-relationship of Section 17.212 and 17.144?

*"The Court:* All I said on that point is that I believe that the facts alleged and the uncontroverted statements indicate that there is a condition of liability. Therefore Section 17.144 would apply if there were nothing more. But there is more, and that is that there has been a claim filed and money paid under the circumstances where both parties have agreed, and therefore they are estopped to deny these facts. I can see where it might be harsh to call the mere filing an irrevocable act, but once they have gone further and entered into not just a unilateral payment, but a payment that requires

consent of both sides, certainly it is not harsh to apply this section 17.212 literally."

Thus it can be seen that the trial court correctly regarded *Jordan, supra,* as authority for the rule that under the doctrine of *res judicata,* the final determination of the compensation commission is binding on that parties to the proceeding *and their privies.* We think he unduly extended *Jordan,* however.

The *Jordan* opinions characterized the dispute over whether John Jordan was an employee or not as a question of fact. This is misleading. John Jordan's status as an employee was actually a conclusion of law based on a given state of facts. If such conclusion of law be actually made by a tribunal of competent jurisdiction such determination would be an adjudication by that body and under the doctrine of *res judicata* would be binding on the parties and those in privity with them. The *Jordan* Court, however, did not advert to the question of whether approval of a redemption agreement is a determination or adjudication for the purpose of applying the doctrine of *res judicata.*

In any event, in this case, we need not determine the abstract question of whether an approval of a redemption agreement is a determination of the conditions of liability under the act by the compensation commission. Here, contrary to the trial judge's ruling, the parties by agreement did not resolve that issue nor did they submit it to the referee for decision. They reserved the question for determination in this lawsuit and expressly represented to the referee that the matter was still disputed.

We do not regard this practice as impermissible under our act. We are provided no reason why the parties could not do so nor does one occur to us.

"There is no good reason why parties may not settle any part of a controversy upon which they may reach agreement and leave the controverted part for litigation." *Wolverine Insurance Co.* v. *Klomparens* (1935), 273 Mich 493 at 497.

In order to be a bar, the adjudication must be taken and rendered upon the merits. *Tucker* v. *Rohrback* (1864), 13 Mich 73. Parol evidence is admissible to ascertain whether a given question in issue was litigated, submitted and decided where the record is not conclusive and the issue of *res judicata* is raised. *Christian* v. *Porter* (1954), 340 Mich 300.

The conditions of liability under the act are necessarily determined by the compensation department for the purpose only of approving a redemption agreement. But this does not necessarily adjudicate the issue for all purposes.

The language of Mr. Justice Field in *Cromwell* v. *County of Sac* (1876), 94 US 351, 356 (24 L Ed 195) is in point:

"On principal, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.

"Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action, other demands arising out of the same transaction. A judgment by default only admits for the purpose of the action the legality of the demand

or claim in suit: it does not make the allegations of the declaration or complaint evidence in an action upon a different claim."

Just as a judgment by default admits the legality of the demand only for the purpose of the suit, so does an agreement of redemption admit the jurisdiction of the commission only for the purpose of approving the agreed payment.

See generally *Jacobson* v. *Miller* (1879), 41 Mich 90, 96 and *Bond* v. *Markstrum* (1894), 102 Mich 11, 17.

We hold that in light of the agreement of the parties to the compensation case that the disputed conditions of liability under the act would be reserved for determination in this law action, these defendants are estopped to raise the claim of release under MCLA § 416.1 (Stat Ann 1968 Rev § 17.212).[4] We regard the payment by the employer pursuant to the redemption agreement under the circumstances of this case as tantamount to a voluntary payment as in *Holcomb* v. *Bullock* (1958), 353 Mich 514 and hold that it may not be pleaded in bar in the instant lawsuit.

We conclude, therefore, that the order of dismissal of defendants Fairview Farms, Incorporated and John D. Willson was entered in error.

Reversed. Appellant may tax costs.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, SWAINSON, and WILLIAMS, JJ., concurred with T. G. KAVANAGH, J.

BLACK, J. (*concurring in reversal*). The instant

---

[4] PA 1969, No 317 has since repealed this section. The current comparable provision is MCLA § 418.831 (Stat Ann 1971 Cum Supp § 17.237[831]) which reads: "Sec. 831. Neither the payment of compensation or the accepting of the same by the employee or his dependants shall be considered as a determination of the rights of the parties under this act."

appeal was submitted January 6, 1971. The Court's majority opinion was delivered to the writer July 23, 1971. It is time now for a third dissent (1967, 1968 and 1971) against reasoning I cannot support, hence preparation and submission this 17th day of August, 1971, to the other Justices, of the ensuing separate opinion for reversal.

The jurisprudential ghost of deceased John C. Jordan[1] returns again, this time under the name of deceased Orville E. Bugg. This time, looking as it does at an inevitably recurrent question, the Court should—but probably will not—firmly declare:

1. That no pecuniarily injured beneficiary of an alleged cause for wrongful death may, by his or her separate, unilateral and finally effective personal acquittance of the accused wrongdoer, destroy or otherwise conclude the pleaded cause.

2. That any such beneficiary, having thus personally acquitted the accused wrongdoer, has accomplished no more and no less than outright elimination of himself or herself as such beneficiary.

Four statutory provisions—all in force when the plaintiff-fiduciary's pleaded cause for wrongful death arose; also in force when she as claimant sought and obtained statutory redemption of her claim for workmen's compensation as a § 5 of part 2 (MCLA § 412.5 [Stat Ann 1968 Rev § 17.155]) dependent of the decedent—join in particularly precise support of the foregoing conclusions of law and their application to the agreed controlling facts. Such provisions are § 2922 of PA 1961, No 236, known as the wrongful death act (CLS 1961,

---

[1] *Jordan* v. *C. A. Roberts Company* (1967), 379 Mich 235 (same on 1968 rehearing, 381 Mich 91), holding that a widow's action in seeking and obtaining for herself an adjudication by the appeal board that her husband had been compensably as well as fatally injured, and then of pocketing the proceeds of a statutory redemption of the employer's liability to her under the WCL, barred outright a timely suit for wrongful death of her decedent husband.

§ 600.2922 as amended by PA 1965, No 146 [Stat Ann 1971 Cum Supp § 27A.2922]) ; § 115 of chapter 2 of PA 1939, No 288, known as the probate statute governing distribution of the proceeds of rights of action for wrongful death (CL 1948, § 702.115 as amended by PA 1965, No 181 [Stat Ann 1971 Cum Supp § 27.3178(185)]) ; § 22 of part 2 of the workmen's compensation law (CL 1948, § 412.22 as amended by PA 1965, No 44 [Stat Ann 1965 Cum Supp § 17.172]), and § 1 of part 6 of the workmen's compensation law (CL 1948, § 416.1 [Stat Ann 1968 Rev § 17.212]). References to these provisions will hereafter be made according to compiler's section numbers as same stood prior to the revision of 1969, effected by act 317.

The first two sections above, 600.2922 and 702.115, have been known pretty well to the profession since the amendments of 1965. Section 600.2922 was fully quoted in 1971 *O'Neill* v. *Morse,* 385 Mich 130, 144, 145. Section 702.115 was fully quoted in 1970 *Breckon* v. *Franklin Fuel Company,* 383 Mich 251, 260–262, 276, 277.

Of the remaining sections cited, one (§ 416.1) is of pointed instant significance. For convenience it is quoted here :

"Sec. 1. If the employe, or his dependents, in case of his death, of any employer subject to the provisions of this act files any claim with, or accepts any payment from such employer, or any insurance company carrying such risks, or from the commissioner of insurance on account of personal injury, or makes any agreement, or submits any question to arbitration under this act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury."

As for application of § 412.22 above, the incontestable demonstrative evidence of adjudicatory

action taken by Mrs. Bugg before the Workmen's
Compensation Department, and of her having taken
unto herself the statutory redemption as ordered on
her bid in the sum of $15,000, speaks both the con-
trolling facts and the legal result that is due here.
Such demonstrative evidence appears in the form
of an appendix, *post* at p 361, consisting of a copy of
the statutory agreement for redemption of liability
signed by Mrs. Bugg and by her husband's employer,
Fairview Farms, Inc. (Appendix "A"), and of a
copy of the department's order for redemption,
issued under said § 412.22 (Appendix "B").

Out of the foregoing the conclusions proposed at
the outset of this opinion have been drawn. Under
the cited statutes it is patently fatuous to suggest
that one individually concerned in or with a duly
pending suit for wrongful death *may,* by action
taken other than in strict accord with compiler's
sections 600.2922 and 702.115, defeat the suit or
destroy the statutory rights of others in and to the
potential proceeds thereof. It is equally absurd to
draw from these statutes intent of the legislature
that one thus concerned *may not,* by voluntary
action on his part resulting either in a release or
an adjudication binding upon him and the alleged
wrongdoer, bar his original right as an eligible
distributee of whatever but for such action might
have been recovered by him as and for pecuniary
injury. As to this last, consider quoted § 416.1. It
is 59 years old and seems never as having endured
any misunderstanding of its "such action shall"
declaration of purpose.

Three years have passed since the Court faced
the problem of *Jordan.* To this day I cannot fathom
the reasoning of our majority in that case. No
trustee, whether or no he is a fellow beneficiary,
may by his own separate venture for personal con-

sideration defeat or bar the rights of other eligible
beneficiaries or, as also here, the rights of eligible
creditors of the trust, from any of their rights under
the wrongful death statute.[2]  No judgment of a
court or other tribunal sought and obtained thus by
him could possibly affect their said rights, they
being neither party nor privy thereto and not being
represented actually or legally in the proceeding
creative of such judgment.  And nothing whatever
in the workmen's compensation law discloses or even
hints at departmental authority to adjudicate the
rights of unrepresented others; rights arising by
virtue of a wholly separate statute such as our
wrongful death act.

Did we not properly hold, in *MacDonald* v. *Quimby*
(1957), 350 Mich 21, that the surviving widow's
effort as plaintiff-trustee to bar the decedent's
dependent mother as a beneficiary of the pending
cause must come to naught?  Would *Jordan's*
majority have held as it did had Mr. Jordan left say
four or five small dependent children, either of his
last or an earlier marriage, all having been ignored
by his widow as she proceeded to statutory redemp-
tion and personal appropriation of the proceeds?
What about the rights of the statutorily designated
creditors of the estate, unto even the lowly under-
taker for whom the legislature attempted expressly
to provide?

In connection with this last, read §§ 600.2922 and
702.115(6) again and reflect upon the repetitious
effect of §§ 2921 and 2922 of the RJA (CLS 1961,
§§ 600.2921, 600.2922 [Stat Ann 1962 Rev §§ 27A-
.2921, 27A.2922]).  Section 2921 provides: "Actions
on claims for injuries which result in death shall

---

[2] For beginning reading on this, the subject being a Missouri
statute couched pertinently the same as § 600.2922, consider *Southern
Pacific Company* v. *Tomlinson* (1896), 163 US 369, 374 (16 S Ct
1171, 41 L Ed 193).

not be prosecuted after the death of the injured person except pursuant to the next section." Section 2922 provides: "All actions for such death, or injuries resulting in death, shall be brought only under this act."

The point just made is not one of presently due interpretation and application of §§ 600.2921, 600-.2922 and 702.115. That will arise when a substantial sum, over and above the amount recovered for pecuniary injury, has been realized for conscious pain and suffering, and for extensive-expensive medical care and hospitalization; the fatally injured decedent having lingered painfully and consciously for days, weeks, or months prior to demise. The specific point made is that, *under the successive majority opinions of Jordan, all* damages recoverable under the wrongful death statute—regardless of the remaining rightful distributees thereof—are lost once the decedent's widow decides to seek and does obtain an award of workmen's compensation in her own exclusive right.

The following conclusions of law, each based steadfastly on the proposition that *this Court should look to the intent of the legislature when called upon to apply a statutory provision or provisions,* are submitted for professional consideration.

A. The powers and authority of the Workmen's Compensation Department *must* be found within the four corners of its mother statute. Nowhere in that entire statute is there any provision which authorizes the department to issue an order of redemption which, by proviso or "no prejudice" language, saves for determination by another forum issue whether the injured employee was engaged in the course of his employment at the time of injury, or issue whether that injury arose out of such employment. This is not to suggest, of course, that

the department attempted any such super-jurisdictional judgment. It did not, as its § 412.22 order of redemption plainly discloses. That order speaks the adjudication of the department; not the ambages of counsel before the referee. See Appendix "B," *post* at p 362.

B. Our hornbooks tell us that no one may lawfully mulct another *twice* for the *same* injury. Here the dependent widow of a fatally injured workman has sought and received in her own right, with departmental approval entered strictly in accordance with § 412.22 aforesaid, a compensatory award that was redeemed and fully paid. *As between the widow and the defendant employer that settled her status.* She legally became a statutory dependent of the decedent, entitled as such to the dependency benefits received by her under § 412.22. She is as much ineligible now, as an alleged pecuniarily injured survivor of her husband, as if she had been judged contributorily negligent in bringing about the traffic accident which caused his fatal injuries[3] or, indeed, as if she had voluntarily settled with the employer and had given to it her own outright release of liability. By the impact not only of § 412.22 but of § 416.1, Mrs. Bugg has received satisfaction in full from her husband's employer, defendant Fairview Farms, Inc., for the fatal injuries suffered by him.

C. *Holcomb* v. *Bullock* (1958), 353 Mich 514, cited by the majority as supporting its holding that the sum paid Mrs. Bugg was merely "tantamount to a voluntary payment," is hardly in point. After defendant Bullock's insurance carrier had paid, *pendente,* compensation benefits in the total sum of $735.75 (of which $415.75 was represented by accrued hospital and medical bills), the issue of com-

---

[3] See Restatement of Torts Second, chapter 17 Contributory Negligence, § 493, pp 553, 554, "Beneficiary Under a Death Statute," and comment thereunder.

pensable injury went to full hearing and determination before a departmental referee. He denied compensation. The appeal board affirmed on ground that "plaintiff was an independent contractor rather than an employee of defendant at the time of the accident."

In *Bugg* the administrative decision was just the other way around, to the tune of $15,000 as and for adjudicated and accepted redemption of Mrs. Bugg's claimed right to compensable benefits. Did not Division 2 rule correctly, in *Johnston's Administrator* v. *United Airlines* (1970), 23 Mich App 279, 285, that "A redemption order is a final determination and an award made and accepted cannot be disturbed except upon a showing that it was procured by fraud." (Citing *Panozzo* [v. *Ford Motor Co.* (1931)], 255 Mich 149 and *Catina* [v. *Hudson Motor Car Co.* (1935)], 272 Mich 377)? Under today's majority view, what happens as regards the paid $15,000? Was all this for free? Did not the employer thereby receive from Mrs. Bugg a § 416.1 release?

The trial court's order for accelerated judgment should be reversed and the cause remanded for trial with the decedent's widow eliminated, by jury instruction, as a claimed *pecuniary* beneficiary. The plaintiff-fiduciary should have costs suffered thus far.

Nothing set forth in the foregoing opinion should be construed as impairing the pleaded rights of Mrs. Bugg, individually or as personal representative of the decedent, as against any defendant other than the decedent's said employer.

## APPENDIX "A"

(Agreement for Redemption of Liability)

STATE OF MICHIGAN

# DEPARTMENT OF LABOR

WORKMEN'S COMPENSATION
DEPARTMENT

## AGREEMENT TO REDEEM LIABILITY

BETWEEN

Orville Bugg (Deceased)
Olive Bugg (Widow)
Reed Ranch

Employee or
Dependent(s)

Fairview, Michigan
Address
and
Fairview Farms, Inc.

Employer

Consolidated Underwriters

Insurance
Carrier

The above parties represent as follows:

Orville Bugg (Deceased) was an employee of Fairview Farms, Inc. and on or about 3–16–67 he received an injury arising out of and in the course of his employment and that as a result of such injury weekly payments have been made to Olive Bugg (Widow) by the employer for not less than six (6) months, and that:

It is the mutual desire of the parties that their differences be permanently compromised, settled and adjudged, and that the plaintiff's claim for compensation and medical benefits be released, discharged, redeemed and ended by the payment of $15,000.00 in a lump sum, by way of redemption of liability.

It is expressly understood and stipulated in the event this redemption of liability is not approved by the Workmen's Compensation Department, nothing contained herein shall be used before the Workmen's Compensation Department at any subsequent proceeding.

I hereby approve of the medical report submitted herewith.

(In the above space state fully the following facts: total amount of compensation paid to date, the present disability of the employee, the reasons for desiring a redemption of liability, and the amount agreed to be paid upon approval of this agreement by the Department.)

WHEREFORE, it is agreed between the parties that the Department may enter an order in this cause providing that the sum of Fifteen Thousand and 00/100 ($15,000.00) Dollars shall be forthwith paid by the employer to Olive Bugg (Widow) and that upon such payment the liability of the employer for the payment of compensation for said injury shall be redeemed in accordance with the first part of Section 22 of Part II of the Workmen's Compensation Act.

Dated     4 Mar 68

> (Signed by Mrs. Bugg, her attorney, and by the attorneys for the employer's compensation carrier)

## APPENDIX "B"

(Order of Redemption)

## REDEMPTION ORDER

(Mailed March 4, 1968)

The agreement to redeem the employer's entire liability for an injury sustained by the plaintiff on 3-16-67 by a single payment in lieu of weekly payments having been considered by a Hearing Referee

of the Workmen's Compensation Department and it appearing that said agreement should be: (APPROVED)

THEREFORE, IT IS ORDERED that said agreement to redeem the employer's entire liability for weekly payments and medical benefits herein by the payment of $15,000.00 is approved.

IT IS FURTHER ORDERED that said sum be paid as follows:

$2,250.00 directly to Bruce O. Wilson, attorney(s) for plaintiff for all legal services rendered, including all expenses in connection therewith;

$..... directly to (specify type or none) .... for medical expenses $12,750.00 directly to the plaintiff, being the balance;

IT IS FURTHER ORDERED that defendant(s) shall also complete the payment of weekly compensation of $..... per week until .........., 19 ..;

IT IS FURTHER ORDERED, that Defendants shall pay the cost of the transcript of the hearing herein.

/s/ Russell E. Bine
Hearing Referee

Signed this 4th day of March, 1968.   County of Oakland.

THE ABOVE ORDER IS ENTERED IN ACCORDANCE WITH THE PROVISIONS OF ACT No. 10, PUBLIC ACTS, FIRST EXTRA SESSION OF 1912, AS AMENDED.  IF A REQUEST BY ANY OF THE PARTIES FOR REVIEW BY THE DIRECTOR, OR NOTICE OF REVIEW BY THE DIRECTOR ON HIS OWN MOTION, IS NOT FILED WITHIN 15 DAYS FROM THE MAILING DATE OF THIS ORDER, IT SHALL STAND AS THE FINAL DECISION OF THE WORKMEN'S COMPENSATION DEPARTMENT.

Adams, J. (*dissenting*).   This case once again raises the problem of choice of remedies between

the wrongful death act and the Workmen's Compensation Act. I read the language of MCLA § 416.1 (Stat Ann 1968 Rev § 17.212), as did the trial judge. Once the provisions of MCLA § 416.1 (Stat Ann 1968 Rev § 17.212) come into play, the Workmen's Compensation Act remedy against the employer is exclusive.

I vote to affirm the trial court, with costs to defendants-appellees.